Stolz, Judge.
This is the second appearance of this case in this court. See M. K. H. v. State of Ga., 132 Ga. App. 143 (207 SE2d 645), where the appeal was dismissed as being premature. The instant appeal arises from a finding of delinquency and disposition of commitment to the Youth Detention Center. The record attached to the appeal in its earlier appearance reveals several facts which should be considered when reviewing the totality of the circumstances involved in this case. Since these facts were before the juvenile court judge below and are part of the official record in this court, they are available to us as we proceed through the decisional process.
Briefly stated, the offense occurred on December 24, 1973. The boy was arrested on December 27, 1973, one day before his fifteenth birthday. At the time, the child was a student at Riverdale Junior High School. A Cognitive Abilities Test by the juvenile court instructor-counselor made for the juvenile court shortly after his placement in custody, showed the following results: Vocabulary - 4.9 grade level; Reading - 5.3 grade level; Spelling - 6.2 grade level; Math - 5.4 grade level. The Otis-Lennon Mental Abilities Test showed a raw score of 20, a conversion I. Q. of 80. The Raven (Progressive Matrices) revealed a performance that was substandard. (R. 15) Psychological examination showed a "Dull Normal (I. Q. 87) Range of Intelligence with slight impairment of abstract reasoning abilities relative to his overall level of functioning . . . personality testing suggests the possibility of a latent or incipient schizophrenia which could impair judgment and impulse control.” (R. 17)
The juvenile court judge erred in allowing the officers to testify as to the hearsay remarks of a co-participant and his mother. We recognize the rule that, in the trial of a case before a judge without a jury, the rules *567 of evidence are less strict. Ward v. State, 26 Ga. App. 61 (105 SE 373). But this does not mean that in such cases the trier of fact can totally ignore the rules of evidence. Hearsay has no probative value. See annotations following Code § 38-301. "It is ... a general rule that testimony of a witness that he heard another confess to the crime is inadmissible as hearsay.” Martin v. State, 102 Ga. App. 216, 218 (1) (115 SE2d 859) and cits. However, the rule is otherwise where the statement is made in the defendant’s presence. Strickland v. State, 115 Ga. App. 278, 279 (2) (154 SE2d 622) and cit.
In Freeman v. Wilcox, 119 Ga. App. 325, 329, supra, this court stated: "In the present case Freeman’s confession was solicited out of court with neither counsel nor parent present. If Freeman was advised of his right to counsel and if he understood that right, it is clear from the record that his mother was not so advised. That is a crucial deficiency under the Gault case. Both must be advised. And we hold that such right extended to Freeman and his mother prior to his interrogation and the solicitation of the confession. We think, under the circumstances, that the confession was too suspect as to its procedural purity and its voluntariness to be allowed into evidence against Freeman.”
The minority seeks to distinguish Freeman on the basis that each case must be judged on its own facts. In that light, let us again return to the facts as revealed in the record before us. On the morning of December 27, 1973, a police car went out to M. K. H.’s residence. There the officers talked with him and asked him if he would voluntarily come to the station and talk about the fire, etc. The boy did so, but under questioning denied any knowledge of the fire and was returned to his residence. (T. 2,6) Just before M. K. H. was to be returned home, the police received a telephone call from another boy’s parents about the fire and their son’s involvement. This family arrived at the police station as M. K. H was being returned home. In their conversations with the police, the son confessed to being involved in the burglary and arson. He also implicated M. K. H. Orders were then issued for M. K. H. tobe arrested and returned to the police station. (T. 6) There is nothing in the record to indicate that the *568 arresting officer did more than read the "Miranda rights” card to M. K. H. prior to obtaining his confession. (T. 14, 15) No effort was apparently made to determine if the boy knew and understood what was being said to him. While the record does reveal that reasonable efforts were made by the police to contact M. K. H.’s parents, there is no evidence that any effort was made to inform M. K. H.’s aunt, who was at the residence when the boy was initially interviewed, of the seriousness of the situation and the boy’s rights in such a case, "(a) A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall: (1) forthwith release without bond the child to his parents, guardian or other custodian upon their promise to bring the child before the court when requested by the court; or (2) bring the child before the juvenile court or deliver him to a detention or shelter care facility designated by the court or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. He shall promptly give written notice thereof, together with a statement of the reason for taking the child into custody, to a parent, guardian, or other custodian and to the court. Any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed by this Code [Title 24A] and rules of court; or (3) bring the child who committed a delinquent act before the superior court of the county where the delinquent act occurred if the act is an act over which the superior court has concurrent jurisdiction as provided in section 24A-301(b); however, pending a committal hearing authorized under Chapter 27-24 or indictment, such child shall be returned and placed in detention, if necessary, only in such places as are authorized by section 24A-1403.” Code Ann. § 24A-1402 (a) (1-3) (Ga. L. 1971, pp. 709, 723; 1973, pp. 882, 885). Here, the boy was arrested (taken into custody) at his home and carried directly to the police station where the interrogation took place. The statute specifically directs the person taking a child into custody to follow one of the three courses previously quoted "without first taking the child elsewhere” (Emphasis supplied.) The police station would *569 certainly qualify as being "elsewhere” under the statute. The record shows that an aunt (custodian) was at the residence (T. 6) and that Clayton County has a juvenile detention center. (T. 7, 8) Nothing in the record indicates the existence of an emergency situation which would excuse the officers from following the procedures outlined in Code Aim. § 24A-1402 (a) (1-3), supra.
Further, the record does not reveal that any effort was made by the arresting officers to determine if the child understood what was being said when the "Miranda rights” card was read to him. As previously noted, the juvenile involved was almost fifteen years of age, yet had a vocabulary which was at the 4.9 grade level, reading at the 5.3 grade level, spelling at the 6.2 grade level, math at the 5.4 grade level, and had a "dull normal (I. Q. 87) range of intelligence with slight impairment of abstract reasoning abilities relative to his overall level of functioning... [with] the possibility of latent or incipient schizophrenia which could impair judgment and impulse control.”
The adjudication of delinquency was based on hearsay evidence and had no probative value. We believe, "under the circumstances, that the confession was too suspect as to its procedural purity and its voluntariness to be allowed into evidence...” Freeman v. Wilcox, supra. No explanation appears in the record giving us the reason for the state’s failure to produce the direct evidence which was available at the juvenile hearing. The state may have had a sound case against M. K. H., but did not present it at the proper time. The adjudication of delinquency was not supported by sufficient competent evidence and therefore must be reversed.

Judgment reversed.

Bell, C. J., Quillian, Clark and Webb, JJ., concur. Evans, J., concurs specially. Pannell, P. J., Deen, P. J., and Marshall, J., dissent.